2012 ME 24

**Franklin L. BURNELL Jr.**

v.

**Lynette D. BURNELL.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2012.
Decided: Feb. 28, 2012.

Jed J. French, Esq. (orally), and Maryellen Sullivan, Esq., Freeport, on the briefs, for appellant Franklin L. Burnell, Jr.

Suzanne N. Russell, Esq. (orally), Vafiades, Brountas & Kominsky, LLP, Bangor, on the briefs, for appellee Lynette D. Burnell.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Franklin L. Burnell Jr. appeals from a judgment of the District Court (Bangor, *Gunther, J.*) granting Lynette Burnell's motion to modify the parties' 1989 divorce judgment. Franklin argues that the divorce judgment was unambiguous in awarding him his full military pension and that the court erred in determining otherwise and awarding a portion of his benefits to Lynette. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] Franklin and Lynette Burnell were divorced in an uncontested proceeding in 1989 after nineteen years of marriage. The divorce judgment (*Kravchuk, J.*), which incorporated an agreement that Franklin's attorney drafted following mediation, allocated parental rights and responsibilities, provided for alimony and child support payments, and divided the parties' property, including awarding the marital real estate to Lynette and awarding to Franklin his savings account and employer-sponsored pension. The provision relevant to this appeal relates to Franklin's military retirement benefits and states: "The Court hereby awards to the husband his National Guard Pension Plan except that the wife shall be entitled to any rights that she has to said plan pursuant to Federal Law."

[¶ 3] Franklin retired from the Air National Guard in 2002 after twenty-seven years of service, including four in active duty in the Air Force, and he began collecting his retirement benefits in 2006. When Lynette learned in 2009 that Franklin was collecting his military pension, she applied to the Defense Finance and Ac-

counting Service (DFAS), the federal agency responsible for processing military retirement pay, for what she believed to be her share of benefits. DFAS denied her application, but sent a form that she and Franklin could complete to "clarify" the court order by agreeing to a specific amount or percentage of benefits to be paid to Lynette.

[¶ 4] After contacting Franklin but failing to receive a response from him regarding the DFAS form, Lynette filed a motion to modify the divorce judgment in January 2010, requesting that the court specify the amount of Franklin's pension to which she was entitled, determine that the amount was retroactive to 2002, and order Franklin to pay that amount plus attorney fees. Lynette's subsequent motion to enforce the divorce judgment was denied and is not at issue on appeal.

[¶ 5] After a March 2011 hearing, the court (*Gunther, J.*) granted Lynette's motion to modify, concluding that the provision of the divorce judgment regarding Franklin's military pension was ambiguous. The court found that the judgment intended to award Lynette her "full share" of the marital interest in Franklin's military benefits. Accordingly, after calculating that approximately eleven of Franklin's twenty-seven years of service occurred during the marriage, the court concluded that Lynette was entitled to 11/54 of Franklin's prospective benefits (one half of 11/27), and amended the judgment to read: "The Court hereby awards Franklin Burnell his Military Pension Plan except that Lynette Burnell shall be entitled to 11/54 of the monthly net pay payable to him, effective April 1, 2011." This appeal followed.

## II. DISCUSSION

[¶ 6] Franklin contends that the divorce judgment unambiguously awarded

him his full military pension and that the court erred by concluding otherwise and granting Lynette's motion to modify the judgment. He argues that the language reserving Lynette's federal rights to the pension was provisional, requiring an inquiry into Lynette's rights pursuant to federal law, but nothing more. We therefore begin by reviewing the language of the divorce judgment in the context of the applicable federal law. "We review de novo whether a provision in a divorce judgment is reasonably susceptible to different interpretations and therefore ambiguous." *Ramsdell v. Worden,* 2011 ME 55, ¶ 17, 17 A.3d 1224.

[¶ 7] The contested provision of the divorce judgment states: "The Court hereby awards to the husband his National Guard Pension Plan except that the wife shall be entitled to any rights that she has to said plan pursuant to Federal Law." In finding this provision to be ambiguous, the court stated:

> Under the military retirement statute ... the wife of a service member acquires no personal "rights" in the military pension. The only interest a spouse accrues is the undivided marital interest.... "Rights" as used in the judgment must mean something other than direct entitlement. The only rights the judgment could be referencing are the undivided property rights.

The court is correct that a former spouse has no right pursuant to federal law to a share of a service member's pension. However, the distinction drawn by the court between "rights" and "marital interest" is misplaced. Whether construed as an "interest" in marital property or as a "right," federal law grants neither to the spouse of a service member. *See Stern v. Marshall,* 564 U.S. ——, 131 S.Ct. 2594, 2616, 180 L.Ed.2d 475 (2011) ("[P]roperty interests are created and defined by state

law." (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)) (quotation marks omitted)).

[¶ 8] The federal law governing distribution of a service member's pension in state court divorce proceedings is the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C.S. § 1408 (LexisNexis 2011).[1] *See Gillis v. Gillis*, 2011 ME 45, ¶ 10, 15 A.3d 720. The USFSPA authorizes, but does not require, a state court to "treat disposable retired pay payable to a member ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C.S. § 1408(c)(1). The statute provides:

> After effective service ... of a court order ..., with respect to a division of property, *specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or a former spouse* of the member, the Secretary shall make payments ..., with respect to a division of property, in the amount of disposable retired pay *specifically provided for in the court order.*

*Id.* § 1408(d)(1) (emphasis added).

[¶ 9] The statute also expressly defines "court order" to mean "a final decree of divorce ... which ... in the case of a division of property, *specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay*, from the disposable retired pay of a member to the spouse or former spouse of that member." *Id.* § 1408(a)(2)(C) (emphasis added). Finally, the statute notes that it "does not create any right, title, or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse." *Id.* § 1408(c)(2).

[¶ 10] The federal statute is thus clear in its scope: it permits state courts to divide military pensions according to state law and provides a mechanism through which such awards to spouses may be enforced. *See Mansell v. Mansell*, 490 U.S. 581, 584–85 & n. 2, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). However, the statute applies only when the court order expressly makes such an award as a specific amount or percentage of benefits and does not itself grant a former spouse any independent right to the benefits.[2] *See Koszegi v. Erickson*, 2004 ME 113, ¶ 20, 855 A.2d 1168 (stating that the USFSPA "governs direct payments from military retirement pay made in compliance with court orders in divorce cases"); *see also Stotler v. Wood*, 687 A.2d 636, 637 n. 2 (Me.1996) ("[T]he [USFSPA] does not bear on the issue whether a military pension is property under state law.").

[¶ 11] The only right or interest a spouse accrues in a service member's

---

1. Although the USFSPA has been amended several times since it was enacted in 1982 (with retroactive applicability to retirement benefits received after June 25, 1981), there have been no relevant amendments to the provisions pertinent to this appeal since the divorce judgment was entered in 1989. *See* Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (1982); 10 U.S.C.S. § 1408(c)(1) (LexisNexis 2011).

2. A DFAS summary of the statute also emphasizes its scope: "The USFSPA does not automatically entitle a former spouse to a portion of the member's retired pay. A former spouse must have been awarded a portion of a member's military retired pay as property in their final court order." Defense Finance and Accounting Service, Former Spouses' Protection Act: Legal Overview, http://www. dfas.mil/garnishment/usfspa/legal.html (April 1, 2011).

pension is therefore solely a result of state law. *See Stern*, 564 U.S. ——, 131 S.Ct. at 2616. The "undivided marital interest" referenced by the court is not an interest created by federal law, but rather a property interest that accrues during marriage pursuant to Maine's property distribution statute, 19–A M.R.S. § 953 (2011). Section 953 allows for the portion of a military pension earned during marriage to be considered marital property subject to equitable distribution. *See Black v. Black*, 2004 ME 21, ¶ 10 n. 4, 842 A.2d 1280; *see also Stotler*, 687 A.2d at 638 (discussing 19 M.R.S. § 722–A (1981), the property distribution statute in effect in 1989). Maine law does not require that a divorce court divide marital property equally, only that the overall property division be just. *Doucette v. Washburn*, 2001 ME 38, ¶ 24, 766 A.2d 578 (construing section 953); *Robinson v. Robinson*, 554 A.2d 1173, 1176 (Me. 1989) (construing section 722–A).

■ [¶ 12] Here, the divorce judgment expressly "awards to [Franklin] his National Guard Pension Plan." It makes no affirmative award to Lynette in the form of 'a specific amount or percentage of Franklin's benefits. Although the divorce judgment might have divided Franklin's military benefits and awarded a share to Lynette pursuant to state property division law, it did not. By reserving for Lynette only those "rights" she had pursuant to federal law, the clear import of the divorce judgment is that its affirmative award of the military pension to Franklin

constituted the application of state equitable distribution law.

[¶ 13] The context of the judgment further supports this interpretation. *See Ramsdell*, 2011 ME 55, ¶ 18, 17 A.3d 1224. The property distributed in the judgment included marital real estate, Franklin's two pensions and his savings account, and the parties' personal property. Lynette was awarded the marital real estate, Franklin was awarded his pensions and savings account, and the personal property was divided between them. In the nearly twenty-three years since their divorce judgment was entered, neither Franklin nor Lynette have challenged the property division as inequitable.[3] The affirmative language used to divide the property further emphasizes its plain meaning: When introducing its allocation of Franklin's pensions, the judgment uses the phrase, "The Court hereby awards to the husband." It is undisputed that Franklin alone was thereby awarded his employer-sponsored pension plan, and the same outcome is presumed from the use of identical language in the military pension provision. By contrast, when Lynette is awarded property, the judgment states: "The Court hereby sets aside said marital real estate to the wife." There is no ambiguity in this language.[4]

[¶ 14] Lynette argues that the second clause of the contested provision—"except that [Lynette] shall be entitled to any rights that she has to said plan pursuant to

---

3.  Franklin and Lynette agreed to modify the alimony provisions of the divorce judgment in 1994. Their stipulation was incorporated into a judgment (*Hjelm, J.*) stating that "[a]ll other matters set forth in said divorce judgment dated September 5, 1989 shall remain in full force and effect."

4.  Although the judgment is unambiguous on its face, we also take note that the court's notations on the 1989 Divorce Hearing

Form—of which judicial notice was taken without objection in the post-judgment proceeding—state on three separate lines under the heading "Property": (1) "Real Estate—to her," (2) "Retirement to him," and (3) "Personal property all divided," further underscoring the lack of ambiguity in the court's award of the entire military pension to Franklin pursuant to state property distribution law.

Federal Law"—would be meaningless if it is not construed as awarding Lynette some portion of Franklin's military pension. We disagree. This reservation of Lynette's rights is appropriately deferential language recognizing that the rights of former spouses of service members may change based on congressional action and preserving Lynette's opportunity to claim a share of Franklin's pension should she gain a right to do so in the future. *See McCarty v. McCarty*, 453 U.S. 210, 235–36, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (noting that "Congress may well decide ... that more protection should be afforded a former spouse of a retired service member").[5] Since federal law does not now and did not in 1989 require the court to make such an award to Lynette, nor did it independently entitle her to any portion of Franklin's pension, the additional clause does not alter the meaning of the first part, which awards Franklin his entire military pension pursuant to the court's state law authority to equitably divide marital property. The divorce judgment is not reasonably susceptible to an alternative interpretation, and the court's determination that the divorce judgment is ambiguous therefore was in error. *See Ramsdell,* 2011 ME 55, ¶ 17, 17 A.3d 1224.

■ [¶ 15] When a judgment is unambiguous, it "must be enforced in accordance with the plain meaning of the language in the judgment." *Id.* Courts "may

not, under the guise of a clarification order, make a material change that modifies the provisions of the original judgment." *Corcoran v. Marie*, 2011 ME 14, ¶ 12, 12 A.3d 71 (quotation marks omitted); *see also Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983). The most that Lynette is granted by the unambiguous language of the divorce judgment is an inquiry into her rights in the future should Congress amend the USFSPA in an applicable manner or enact other legislation altering her federal rights with respect to Franklin's pension. Accordingly, her motion to modify the judgment should have been denied.

[¶ 16] Because we conclude that the provision awarding Franklin his military pension is unambiguous and that Lynette's motion to modify was improperly granted, we need not address Franklin's remaining arguments.

The entry is:

Order vacated with respect to the grant of the motion to modify the divorce judgment. Remanded to the District Court for entry of a judgment denying the motion to modify.

5. The *McCarty* decision held that state courts may not divide military retirement pay pursuant to state community property laws. *McCarty v. McCarty*, 453 U.S. 210, 232–36, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). As the decision itself contemplated, its holding was superseded by Congress's subsequent enactment of the USFSPA, which increased the protections for former spouses of service members by expressly permitting state courts to treat military retirement pay as property subject to division upon divorce. *See Mansell v. Mansell*, 490 U.S. 581, 584, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989); 10 U.S.C.S. § 1408(c)(1); *see also Depot v. Depot*, 2006 ME 25, ¶ 8, 893 A.2d 995 (acknowledging that "Congress has legislatively countermanded the holding[] in ... *McCarty* by making ... military retirement benefits subject to community property law").